# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

### JANUARY TERM, 1917

[No. 2273]

EDNA T. EDDY, PETITIONER, *v.* THE STATE BOARD
OF EMBALMERS, RESPONDENTS.

[163 Pac. 245]

1. LICENSES—EMBALMER'S LICENSE—"SHALL."
    As used in act approved February 20, 1909 (Rev. Laws, 4453),
    section 9, providing that the state board of embalmers shall
    recognize licenses issued in another state, and on presentation
    thereof shall issue the regular license to the holders, the word
    "shall" is not equivalent to "may," but is mandatory.
2. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.
    The unambiguous language of a statute cannot be construed
    contrary to its clear meaning.

ORIGINAL PROCEEDING in *mandamus* by Edna T. Eddy
against the State Board of Embalmers. **Writ issued.**

*Young & Brown,* for Petitioner:

The United States constitution and the constitution
of the State of Nevada guarantee to every person the
right to enjoy life, liberty and the pursuit of happiness.
(*Marymont* v. *Banking Board,* 33 Nev. 330; *Davies* v.
*McKeeby,* 5 Nev. 369; *State* v. *Stoutmeyer,* 7 Nev. 342.)

It is the duty of the respondents to issue the license to
petitioner. (Rev. Laws, 4445–4459; *Humboldt County* v.

*Churchill County*, 6 Nev. 30.) The wording of the statute is mandatory and imperative. The word "shall," as used in the statute, is always construed to mean "must." "The word 'shall' will always be construed to mean must when the rights of third parties or the interest of the public depends upon that construction being given it." (35 Cyc. 1421; *Dimpley* v. *Ford*, 2 Mont. 300; *People* v. *Sanitary Board*, 184 Ill. 597, 56 N. E. 953; *City of Madison* v. *Daley*, 58 Fed. 751; *Ex Parte Jordan*, 94 U. S. 248, 24 L. Ed. 123; *People* v. *Board of Assessors*, 39 N. Y. 81; *In Re Douglas*, 46 N. Y. 42; *Greater New York Athletic Club* v. *Wurster*, 43 N. Y. Supp. 703.)

*Geo. B. Thatcher*, Attorney-General, and *E. T. Patrick*, Deputy Attorney-General, for Respondents:

The word "shall," in section 9 of the act in question, is permissive only—not mandatory. It is controlled by the title of the act and by the provisions of sections 2 and 5 of the act itself, and therefore petitioner is not entitled to a recognition of her California license, and her petition should be denied.

The word "shall" herein is permissive and directory and not mandatory, and should be construed as "may," for the reason that a discretion is vested in the respondents, and for the further reason that its use in a mandatory sense might destroy the whole purpose, force and effect of the act itself. (*State* v. *Clark*, 2 Ala. 26; *State* v. *Grace*, 136 S. W. 670; *Cooke* v. *Spears*, 2 Cal. 409, 56 Am. Dec. 348; *Borkheim* v. *Firemen's Fund Ins. Co.*, 38 Cal. 505; *Coke* v. *Los Angeles*, 164 Cal. 705; *City of Denver* v. *Londoner*, 33 Colo. 104; *Appeal of Donovan*, 40 Conn. 154; *Burns* v. *Henderson*, 20 Ill. 264; *Morrison* v. *State*, 181 Ind. 544; *Sisson* v. *Board*, 128 Iowa, 442; *Bank* v. *Lyman*, 59 Kan. 410; *Commissioners* v. *Meekins*, 50 Md. 28; *Suburban L. & P. Co.* v. *City of Boston*, 153 Mass. 200, 10 L. R. A. 497; *State* v. *Strait*, 94 Minn. 384; *Cason* v. *Cason*, 31 Miss. 578; *Kirman* v. *Powning*, 25 Nev. 378; *Dangberg* v. *Commissioners*, 27 Nev. 469; *In Re Lent*, 40 N. Y. Supp.

570; *State* v. *West,* 3 Ohio St. 509; *Bosworth* v. *Smith,* 9 R. I. 67.)

The equitable construction of statutes is a construction which extends a statute to a like case not within the words of the statute, but within its purpose, or which prevents the operation of a statute upon a case within the words, but not within the purpose. (*Wilen* v. *Kelsey,* 3 Ga. 274; *Eyston* v. *Studd,* 75 Eng. R. P. 688.)

Closely allied to the doctrine of the equitable construction of statutes, and in pursuance of the general object of enforcing the intention of the legislature, is the rule that the spirit or reason of the law will prevail over the letter. (*Davis* v. *Thomas,* 154 Ala. 279; *Chandler* v. *Lee,* 1 Idaho, 349; *Wabash Railroad* v. *Binkert,* 106 Ill. 298; *Gray* v. *Cumberland County,* 83 Me. 429; *Perry* v. *Strawbridge,* 209 Mo. 621; *Mendles* v. *Danish,* 74 N. J. L. 333; *People* v. *Lacombe,* 99 N. Y. 43.)

Words may accordingly be rejected and substituted, even though the effect is to make portions of the statute entirely inoperative. (*Pond* v. *Maddox,* 38 Cal. 572; *Farmers' Bank* v. *Hale,* 59 N. Y. 53.) The meaning of general terms may be restrained by the spirit or reason of the statute. (*Moss* v. *U. S.,* 29 App. Cas. 188.) General language may be construed to admit implied exceptions. (*Kelley* v. *Killourey,* 81 Conn. 320; *Plumley* v. *Birge,* 124 Mass. 57; *Peck* v. *Williams,* 24 R. I. 582.) Every statute must be construed with reference to the object intended to be accomplished by it. (*Dekells* v. *People,* 44 Colo. 525; *People* v. *Sholem,* 238 Ill. 203; *Chesapeake Canal Co.* v. *Baltimore R. R. Co.,* 4 Gill & J.; *Keith* v. *Guinney,* 1 Or. 364.) The statute should be given that construction which is best calculated to advance its object. (*Greenough* v. *Police Commissioners,* 29 R. I. 410; *United States* v. *Jackson,* 143 Fed. 783; *Maynard,* v. *Johnson,* 2 Nev. 25.) It is a cardinal rule of construction of statutes that effect is to be given, if possible, to every word, clause, and sentence. (*Hawkins* v. *Railroad,* 145 Ala. 385; *Denver* v. *Campbell,* 33 Colo. 162; *People* v. *Sholem,*

87 N. E. 390; *In Re Kilby Bank,* 23 Pick. 93; *James* v. *Dubois,* 16 N. J. L. 285.)

It is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent and harmonious and give a sensible and intelligent effect to each. (*Stump* v. *Hornback,* 94 Mo. 26; *Morris Railroad Co.* v. *Commissioner,* 37 N. J. L. 228; *State* v. *Burr,* 16 N. D. 581; *Lawson* v. *Tripp,* 33 Utah, 28.) That construction of a statute is to be avoided which is liable to produce a public mischief or to promote injustice. Language, however strong, must yield to what appears to be the intention; and that is to be found, not in the words of the particular section alone, but by comparing it with other parts or provisions of the general scheme of which it is a part. (*Hayden* v. *Pierce,* 144 N. Y. 516.)

A literal reading of section 9 of the law perhaps sustains petitioner's contention. However, such literal interpretation violates both the spirit and intent of the act and renders nugatory several of its provisions. Its title shows it was enacted "to provide for the better protection of life and health," and "to prevent the spread of infectious and contagious diseases in the state."

By the Court, COLEMAN, J.:

This is an original proceeding in *mandamus,* wherein petitioner seeks to compel the respondents, as members of the State Board of Embalmers, to issue to her a license to practice the profession or art of embalming.

It is alleged in the petition that petitioner is a resident of the State of Nevada, and that on the 2d day of October, 1916, the board of examiners of the state board of embalmers of the State of California, after submitting petitioner to a rigid written examination, issued to her a license to practice the profession or art of embalming in the State of California, pursuant to "An act to establish a state board of embalmers, defining the duties thereof, providing for the better protection of life and health, preventing the spread of contagious disease, regulating the practice of embalming in connection with the care

and disposition of the dead and providing penalties for the violation thereof," approved April 16, 1915 (Stats. Cal. 1915, p. 80); that petitioner applied to respondents for a license to practice the profession or art of embalming in the State of Nevada, and tendered respondents the necessary fee therefor, but that respondents refused, and still refuse, to issue such license to her as requested.

To this petition a demurrer was filed, upon the ground that the petition did not state facts sufficient to entitle petitioner to the relief demanded. Later, and without waiving the demurrer, respondents filed an answer to the petition, in which certain issues of fact were raised. But since on the oral argument, as stated in respondents' brief, "it was virtually conceded that the decision in this case would turn upon the meaning of the word 'shall' in the first line of section 9" of "An act to establish a state board of embalmers," etc., approved February 20, 1909 (Stats. 1909, p. 26; Rev. Laws, 4453), we will consider this matter upon the demurrer, as though no answer had been filed.

Section 9, above referred to, reads as follows:

"The state board of embalmers shall recognize licenses issued previous to the passage of this act, or at any other time by other state boards of embalmers, and state health authorities, and upon presentation of such licenses shall issue the regular license to holders of such license and certificate of competency."

It is the contention of respondents that the word "shall" should be construed to mean "may," and that when so construed it is in their discretion, pursuant to the rules adopted by them, to decline to issue a license when requested so to do, when such request is based upon an embalmer's license from the State of California.

A long list of authorities is cited in which the word "shall" was construed to mean "may." Counsel for petitioner cites as many or more cases in which the courts have held the word "shall" to be mandatory. Whether or not the word "shall" should be construed to be mandatory or directory depends upon the intention of the

legislature in incorporating section 9 in the act, as such purpose may be gathered from the whole statute.

**1.** It is the contention of respondents that since, under our statute, all applicants for licenses, except those falling within the terms of section 9, are required to pass a rigid written examination and make actual demonstration on cadaver, section 9 should be so construed as not to require the respondents to issue a license to an applicant holding a license from the State of California where, as it is contended, the passing of such a rigid examination is not a condition precedent to the obtaining of a license. Why should we presume that the legislature intended that such an interpretation should be placed upon section 9? If such had been the intention of the legislature we think it could have made that idea clear by the use of about six or eight words more than it did in section 9.

**2.** When the legislature uses plain ordinary language, which clearly expresses a definite idea, we do not know why the courts should go out of their way to so construe the language used as to convey a different meaning. We are of the opinion that by section 9 the legislature simply intended to follow the rule of comity which exists between the various states in many matters of a similar character. If this was the real purpose of the legislature, it is plain that the writ applied for should issue.

The writ will issue as prayed for.